ASH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evgenii Vladimirov, | No. CV-26-01200-PHX-JCH (CDB) |
| Petitioner, | |
| v. | **ORDER** |
| Christopher McGregor, et al., | |
| Respondents. | |

Petitioner filed this action under § 2241 challenging his immigration detention. (Doc. 1). On February 20, 2026, the Court issued an Order to Show Cause why the Petition should not be granted. (Doc. 4). Upon review of the briefing (Docs. 6, 7),[1] the Court will grant the Petition in part and order that Petitioner receive a bond redetermination hearing that comports with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) within seven days.

## I. BACKGROUND

Petitioner is a native and citizen of Russia. (Doc. 1 ¶ 36). He entered the United States on a valid B-2 non-immigrant visa on November 17, 2020. (*Id.*). Petitioner is married to a United States citizen, who filed a Form I-130 immigrant visa petition on his behalf. (*Id.*). Petitioner also filed an application for adjustment of status under 8 U.S.C. § 1255. (*Id.*).

---

[1] Petitioner has also filed a Motion to Expedite this matter. (Doc. 10). In light of this Order, the Court will deny the Motion as moot.

On July 2, 2024, Petitioner was convicted in California of two misdemeanor offenses and received a suspended sentence and three years of formal probation. (*Id.* ¶ 37). As a result of his convictions, the Department of Homeland Security (DHS) initiated removal proceedings. (*Id.* ¶ 38). Petitioner was detained by Immigration and Customs Enforcement (ICE) officials on July 8, 2024, and has been continuously detained since then. (*Id.*).

While he has been detained, Petitioner sought custody redetermination on three occasions. (*Id.* ¶ 39). On August 1, 2025, an Immigration Judge (IJ) denied bond, finding that Petitioner failed to establish "by clear and convincing evidence" that his release would not pose a danger to persons or property. (*Id.* ¶ 40). On September 24, 2025, another IJ denied Petitioner's request for custody redetermination under 8 C.F.R. § 1003.19(e) on the ground that he had not demonstrated a material change in circumstances since the prior bond determination. (*Id.* ¶ 41).

On December 16, 2025, an Immigration Judge adjusted Petitioner's status based on his marriage to a United States citizen, determining that he was eligible for lawful permanent residence and was not inadmissible because of his convictions. (*Id.* ¶ 42). The Department of Homeland Security (DHS) appealed the decision to the Board of Immigration Appeals, and the appeal remains pending. (*Id.* ¶ 43).

On January 12, 2026, Petitioner again requested custody redetermination. (*Id.* ¶ 44). The IJ denied the request, finding no material change in circumstances from the prior bond decision. (*Id.*). Petitioner remains in discretionary detention under § 1226(a) pending DHS's appeal. (*Id.* ¶ 45).

As of the date of this Order, Petitioner has been detained for over two years.

**II.    28 U.S.C. § 2241 WRIT OF HABEAS CORPUS**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the

legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[2] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner challenges the standard of proof that was applied at his bond hearings. He contends that the burden was improperly placed on him to show that he was not a danger to the community or a flight risk, and that due process requires either his release or a new bond hearing at which the Government bears the burden of showing that Petitioner is a danger or flight risk. Respondents answer that the Ninth Circuit has held that the "imposition of the burden of proof upon the alien in § 1226 bond proceedings facially satisfies due process." (Doc. 6 at 3).  They further argue that "[a]n alien's objection to the outcome of a bond hearing does not establish that the procedures governing the proceeding at which bond was denied violated due process." (*Id.*).

In general, during a bond hearing conducted under § 1226(a), "the burden is on the noncitizen to demonstrate that their 'release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1242 (D.N.M. 2025) (quoting 8 C.F.R. § 236.1(c)(8)). As Respondents note, placing the burden of proof upon a noncitizen during a § 1226(a) bond hearing is facially constitutional. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022). However, "in so holding, [the *Rodriguez Diaz* court] [did] not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.* "Individualized circumstances" may "warrant[] additional procedures," and it is possible that following typical § 1226(a)

---

[2]    The undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent. *See, e.g.*, *Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023).

procedures nonetheless results in an unconstitutional failure to provide due process in a particular case. *Id.*

The *Rodriguez Diaz* court "assume[d] without deciding" that in the context of a petitioner detained under § 1226(a) who seeks additional procedures, the three-part balancing test set forth in *Mathews v. Eldridge* is the appropriate analysis to undertake. *Id.* at 1207. The applicability of the *Mathews* test in this context is the majority view among other Courts of Appeals and District Courts. *See, e.g.*, *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) (collecting cases). This Court will therefore apply the three-part *Mathews* test to the instant case. In doing so, the Court must weigh: (1) the private interest affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### A.     Private Interest

The primary private interest at stake here is freedom from detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). Petitioner has been detained since July 8, 2024, a span of nearly two years. (Doc. 1 at 8). Detention for a period of more than six months typically qualifies as "'prolonged' in a general sense." *See Rodriguez Diaz*, 53 F.4th at 1207 (citing *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011); *Zadvydas v. Davis*, 533 U.S. 678 (2000)). Although "the longer the duration of detention, the greater the deprivation of a noncitizen's private interest," *Choate*, 744 F. Supp. 3d at 1183, courts have found that the private interest in freedom from detention is so weighty that even detention for just three or four months without § 1226(a) process means that the first *Mathews* factor must cut in a detainee's favor. *Velasquez Salazar*, 806 F. Supp. 3d at 1243; *Colmenares-Pinto v. Warden of Golden State Annex Ice Det. Facility*, No. 1:26-CV-00812

DAD SCR, 2026 WL 923804 at *5 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, No. 1:26-CV-00812-DAD-SCR, 2026 WL 1430913 (E.D. Cal. May 21, 2026).

Here, Petitioner has been afforded three bond hearings. However, the first of these—in August 2025—was not provided until Petitioner had already spent more than a year in detention, and the subsequent two denied relief on the basis that Petitioner had failed to show a change in circumstances post-dating the first hearing. As to the most recent hearing in January 2026, the "no material change in circumstances" finding is at odds with the intervening determination by a different IJ—currently on appeal—that Petitioner was eligible to become a lawful permanent resident.

This case is thus distinguishable from *Rodriguez Diaz*—in which the court concluded that the petitioner had failed to prevail on an as-applied challenged to § 1226(a)—because unlike in *Rodriguez Diaz*, Petitioner spent more than a year without access to the process afforded under § 1226(a). Given that Petitioner has an interest not only in freedom from detention, but also in access to the procedural rights he is mandated under statute, here, Petitioner's private interests are enhanced. *See Colmenares-Pinto*, 2026 WL 923804 at *5 (finding burden shifting in bond hearing to be appropriate where petitioner initially unlawfully detained under § 1226(c)); *Velasquez Salazar*, 806 F. Supp. 3d at 1242 (finding burden shifting in bond hearing to be appropriate where petitioner initially unlawfully detained under § 1226(a)).

Moreover, in *Rodriguez Diaz* the court found it significant that "most of the period" of the petitioner's detention in that case "arose from the fact that he chose to challenge before the BIA and later [the Ninth Circuit] the IJ's denial of immigration relief." *Rodriguez Diaz*, 53 F.4th at 1207. In addition, the court found that the petitioner's "private interests [were] further diminished by the fact that he is subject to an order of removal from the United States." *Id.* at 1208. Here, neither of those considerations apply. Petitioner was placed in removal proceedings after his detention, and there is nothing in the record to suggest that his actions in those removal proceedings have exacerbated the amount of time he has been detained. Moreover, it does not appear that Petitioner is subject to a final order

- 5 -

of removal.

Accordingly, the first *Mathews* factor weighs strongly in Petitioner's favor.

**B.      Risk of Erroneous Deprivation & Value of Additional Safeguards**

Because Petitioner was initially detained for more than a year without the procedures due under § 1226(a), the risk of the erroneous deprivation of his liberty is high. In *Rodriguez Diaz*, the court found that the second *Mathews* factor weighed in the Government's favor because "[p]ursuant to § 1226(a) and its implementing regulations, when ICE initially detained Rodriguez Diaz, an ICE officer made an individualized custody determination," and "throughout the course of his detention, Rodriguez Diaz has had the right to seek an additional bond hearing if his circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1209. Therefore, the court concluded that "the agency's decision to detain Rodriguez Diaz was subject to numerous levels of review," rendering the risk of erroneous deprivation "relatively small." *Id.* at 1210.

Here, when Petitioner was initially detained in July 2024, it does not appear that an ICE officer made an individualized custody determination, and Petitioner spent more than a year without being afforded any bond hearing.  After his first bond request was denied, the subsequent bond redetermination requests appear to have been largely pro forma.  In any event, given the untimeliness of the initial August 2025 hearing—as noted, § 1226(a) hearings typically occur at the outset of detention—the burden should have been on the Government—rather than Petitioner—to justify Petitioner's continued detention, and the hearing was therefore insufficient to protect Petitioner's due process rights.  "Shifting the burden to the Government at a subsequent bond hearing likely will reduce the risk of the continuing erroneous deprivation of Petitioner's liberty interests," *Velasquez Salazar*, 806 F. Supp. 3d at 1243, and the Court finds that there is significant value to affording Petitioner additional procedural safeguards. The second *Mathews* factor therefore weighs in Petitioner's favor.

///

///

### C.    Government Interest

The Government "clearly has a strong interest in preventing aliens from 'remaining in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208. "[I]n a *Mathews* analysis, we must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative . . . . [and] [t]his is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." *Id.* (internal quotation marks and citations omitted).

However, "the Government's interest in detaining Petitioner only outweighs his liberty interests if he is a flight risk or a danger to his community." *Velasquez Salazar*, 806 F. Supp. 3d at 1244.  Moreover, "[s]hifting the burden to the Government to justify detention may actually promote the Government's separate interest in managing overcrowding at DHS detention facilities." *Id.* Finally, "the government has a vast number of resources at its disposal to gather information" about whether Petitioner is a danger or a flight risk. *Choate*, 744 F. Supp. 3d at 1185.

As noted, Petitioner has been found eligible to become a lawful permanent resident, which would support that Petitioner is, at the very least, not a flight risk.  Nevertheless, because that finding is currently on appeal and thus not final, the Court concludes that the third *Mathews* factor is neutral.

### D.    Conclusion

Given that two of the three *Mathews* factors weigh in Petitioner's favor and the third factor is neutral, the Court finds that as applied to Petitioner, the procedures so far afforded to him under § 1226(a) have not been sufficient to comport with due process. Accordingly, the Court will require the Government to bear the burden of proving by clear and convincing evidence that Petitioner is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011), *abrogated in part as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020), *rev'd and remanded on other grounds,* 596 U.S. 543 (2022).

///

Accordingly, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Petitioner's request for a bond hearing and is **DENIED** as to Petitioner's request for immediate release.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order.

1. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report with the Court within **THREE (3) DAYS** of the bond hearing.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Expedite (Doc. 10) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that any motion for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment. *See* 5 U.S.C. § 504; 28 U.S.C. § 2412(d)(1)(B), (d)(2)(g).

**IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment accordingly, and close this case.

Dated this 29th day of July, 2026.

John C. Hinderaker
United States District Judge